## J. G. STOWE, RECEIVER, ETC., v. FIRST NATIONAL BANK.

1. PLEDGEE NO RIGHT TO APPROPRIATE COLLATERALS FOR OTHER DEBTS.

Where a partnership borrows a sum of money from a bank, giving a note therefor, and by the terms of said instrument, p'edging as collateral security for its payment, a promissory note, for a larger sum, belonging to said partnership, which is also indorsed and delivered to the bank, and the instrument of pledge only gives to the bank the right to hold it as collateral for the note so executed to it, the bank has not a banker's lien upon the residue thereof, or the right to appropriate it, or any part thereof, to the payment of another note indorsed by said partnership to the bank, before the pledge of the collateral, and which still remains unpaid and on which the firm is liable to the bank—these being the only transactions appearing to have been had between the said parties. In such case the bank must stand on its written contract. ·

2. INABILITY TO OFF-SET CLAIMS.

After the dissolution of such partnership by the death of one of its members, and the appointment of a receiver therefor, an action was brought by the bank on the pledged note, and the receiver was made a party, and set up his claim for a judgment against the makers of the note, for the amount that would be left after the satisfaction of the note for which it had been pledged, and to this extent denying the ownership of the bank to the note. The bank replied, setting up its banker's lien on such residue for the other note. By consent the whole amount due on the collateral note was paid to the bank without prejudice to the rights of the receiver. and was more than sufficient to pay the note for which it had been pledged. The bank filed an amended reply alleging the receipt of the money by it, but setting up as against the receiver's right to it, the other note by way of set-off. *Held*,

This cannot be done. The claim the receiver was asserting, was one against the makers of the collateral note; and when the bank received this, it was money had and received to his use, and became a claim against the bank, and could not be offset by a claim against a dissolved partnership. The rights of the parties must be adjudicated as they were at the commencement of the litigation, except so far as they may have changed them by consent.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

The admissions made in the pleading and the written agreement of the parties made part of the record, by a bill of exceptions, show the following state of facts:

On April 11, 1885, the First National Bank of Hamilton, Ohio, commenced an action, and sought to recover a judgment against Patterson & Stearns and others, as makers, and Wm. H. Hill and T. E. Spooner, partners as Wm. H. Hill & Co., and Jos. C. Smith, as administrator of the estate of Wm. H. Hill, deceased, as indorsers of a promissory note for $10,000, dated April 7, 1884, due twelve months after date, and bearing 8 per cent. interest from date, payable to the order of Wm. H. Hill & Co., and by said partnership indorsed in blank. And the petition also alleged that said note was duly indorsed and transferred for value before due, by said Wm. H. Hill & Co. to the plaintiff, which is still the owner thereof. That said note not being paid at maturity, it was duly protested for nonpayment, and said Wm. H. Hill & Co., and Smith as administrator of the estate of Hill duly notified. Judgment was asked against all, for $6,177.72, the balance said to be due thereon, with 8 per cent. interest from February 21, 1885.

No defense was made to this action by any of the makers or indorsers. W. H. Hill had died January 29, 1885, insolvent. His death dissolved the partnership of W. H. Hill & Co., and on March 11, 1885, in an action prosecuted for that purpose, J. G. Stowe was appointed as receiver for the firm, and having been made a party to the action, he filed an answer and cross petition May 9, 1885.

In it, he alleges his appointment as such receiver, and denies that the bank is the owner of the *whole* of the note sued on, and sets up this state of fact, which is admitted to be true.

He says that on January 19, 1885, W. H. Hill & Co. had executed to the bank their note for $7,000, due 30 days after date, and to bear interest at 8 per cent. after maturity. As a part of the note was this agreement or recital, after "the promise to pay" and before the signature thereto, viz: "Having deposited or pledged as collateral security 'for the payment of this note, a note for $10,000 signed by Patterson & Stearns, and others,' dated St. Marys, O., April 7, 1884, payable 12 months after date. And we hereby give to the holder hereof, full power and authority to sell or collect at our expense, all or any part or portion thereof at any place in Cincinnati or elsewhere at public or private sale, at holder's option, on nonperformance of the above promise, and at any time thereafter, and without advertising the same, or otherwise giving to us any notice. In case of public sale, the holder may purchase, without being liable to account for more than the net proceeds of such sale.

                                                          W. H. HILL & Co."

The receiver then alleges, that there is due on this note of $7,000, executed to the bank, a balance of only $5,000, with interest from February 21, 1885, and that to this extent only has the bank any lien upon, or right to the note of $10,000 sued on, and that the residue of such collateral note belongs to him as such receiver. And he asks that the plaintiff may have a judgment only for the amount due it on the $7,000 note, and that he as receiver may have a judgment for the balance then due upon such collateral note.

The original reply of the plaintiff to this answer and cross petition was filed May 11, 1885, and admitted that it held the $10,000 as collateral security for the $7,000 note, but further claimed that it also held it as collateral security for another note made by W. H. Hill & Co. to J. C. Symmes for $1,000, dated November 12, 1884, due in 90 days, and indorsed to the bank by said Symmes, Thos. Spooner and W. H. Hill, and which not being paid at maturity was duly protested, and is yet unpaid.

On July 13, 1885, after this issue was made, by the consent of all the parties, the bank was allowed to take a judgment against the makers of the collateral note, for the balance due, $6,172.72, to bear interest from June 1, 1885. It was found by the court that the bank had a lien upon it for the balance due it on the $7,000 note, and all other questions between the bank and Stowe, receiver, were reserved for future decisions.

This judgment was then by consent of parties paid to the bank by the makers of the note, and the controversy is now as to the disposition of the residue thereof, after paying the amount due on the $7,000 note; this balance was about $1,172,72.

After payment of this judgment to the bank, it filed, Nov. 25, 1885, an amended reply to the answer and cross petition of Stowe.

First. It set up that it held the $7,000 note, as set forth in the answer of Stowe, and then alleged that on November 12, 1884 (before the giving of the $7,000 note), Hill & Co. had executed to Symmes the $1,000 note mentioned in the original reply, which was afterwards indorsed to and was then owned by the bank, and was still unpaid, and that the plaintiff had a banker's lien on the $10,000 note or its proceeds after collection to secure the $1,000 note.

And second, by way of counter-claim and set-off, it alleges that having since the filing of the former reply, collected the balance due on the $10,000 note, and having applied sufficient of it to the payment of the balance on the $7,000 note for which it was pledged, that they had also applied $1,000 thereof to pay said $1,000 note, which left in their hands only $172.72, which they were ready to hand over.

On this state of fact admitted and agreed to, the court of common pleas adjudged that the bank had the right to apply the balance to said $1,000 note, and ordered it to pay the balance, $180.73, to the receiver; and this is the judgment which the latter seeks to reverse.

Only two questions arise, or have been argued: First, had the plaintiff a banker's lien on the collateral note or its proceeds for the security of the $1,000 note?

And second, if not, as the bank had collected thereon, after the issue joined between it and the receiver, enough to pay the $1,000 note, can the bank as against the claim of the receiver, set off the $1,000 note against the claim the receiver was asserting against the bank?

First, as to the banker's lien; it is perfectly plain that by the terms of the contract itself, the bank acquired no lien on the $10,000 collateral note to secure the $1,000 note before that time executed. There is no allusion in it to such a note, and it is manifestly pledged only for the $7,000 note.

It seems equally clear that the bank had no *general* lien upon it for the security of the $1,000 note—so far as appears by the evidence, these two loans from the bank are the only transactions Hill & Co. ever had with it. There is no claim that they were depositors there, or had a running account with it, and it is doubtful whether they occupied such a relation to each other as would give any such general lien. This doctrine of lien is thus stated in Grant on Banking, 244: "Unless there be an *express* contract, or circumstances showing an *implied* contract inconsistent with the principle of lien, bankers have a general lien on all securities deposited with them *as bankers* by their *customers.*" We doubt whether the firm of Hill & Co. were customers of the bank in the meaning of the law.

But whether this be so or not, we think it clear in the light of the authorities, that such lien does not arise, as stated in the quotation just made from Grant, "where there is an express contract, or circumstances showing an *implied* contract inconsistent with the principle of lien." Or, as the doctrine is succinctly stated in Colebrook on Collateral Securities, section 62: "Where funds or securities are deposited with a banker as collateral security to cover a *special advance or discount*, the lien of the banker thereon is limited, and is discharged upon repayment of such special advance. And a claim of a banker of a general lien for balances,

*or on account of other loans*, upon such funds or securities, is not supported where
a contract for the special appropriation thereof is established," and the same
doctrine is laid down in Grant on Banking, 245.

And in 17 O., 576, the court in deciding the case of Gordon v. Kearney, quote
approvingly the language of the Supreme Court of the United States, 17 Peters,
174, as follows : " It has been long settled that whenever a banker h      advanced
money to another, he has a lien on all the paper securities which are in his hands,
for the amount of his general  balance, *unless such sureties were delivered to him
under a particular agreement*." In this case it is not controverted but that there
was a special contract of pledge, and we hold that the bank had no lien on this
note to secure the note of $1,000.

Such being the case, it is clear that the bank held it as the trustee of Hill
& Co., and on receiving the amount of the note for which it was pledged, it was
its duty to return the note itself, if still held by it, or if it had been paid, to
return the amount (over and above the amount of the note to secure which it
was pledged) to the pledgor.

The note of $7,000 had not been fully paid at the time of the bringing of the
action by the bank on the collateral note. But the amount due on the collateral
note was much greater than the amount due on the note, to secure which it was
pledged. The bank therefore held it as trustee to collect, and apply the pro-
ceeds, first to the payment of the balance due on the $7,000 note, and then pay
the balance to Hill & Co., or their assignee, and of course did not own the whole
note absolutely. It appearing that the receiver was asserting a claim to some
part of the note, he was made a party and set up his right to it. This was proper
practice as held in Osborn v. McClelland, 43 O. S., 284. In the fourth para-
graph of the syllabus in that case it is said: "So the real owner may intervene
and by cross petition obtain the relief to which he is entitled, as against the en-
dorsee or holder, who is the apparent owner." And we see no reason to doubt
that the same would be the case, where, as in this instance, a claim is asserted
that he is the owner only of a *part* interest therein.

And by the issue as first made, the question was, whether the receiver was
entitled to a judgment against the makers of the note for his interest therein, sub-
ordinate of course to the prior right of the bank. And on the facts of the case
we think he was.

But as by consent of all the parties, the whole amount of the judgment was
paid to the bank, the circumstances of the parties changed somewhat and gave
opportunity to the bank to set up its claim by way of set-off, or counterclaim—
for as the bank had received the money, the claim of the receiver must be
asserted against the bank for money had and received for his use. And the bank
now seeks to set up as against this claim, the $1,000 note it held against Hill &
Co., though in the amended reply it says it had paid it off with the amount thus
received on this judgment. Can this be done ?

It seems to us that it cannot, and for these reasons : The rights of the par-
ties should be adjudicated as they stood at the time of the commencement of the
suit, except as they have agreed to change them, by litigating as to the proceeds
of the note, instead of the note itself. As we have held, Stowe was entitled to a
judgment against the makers of the note, for the amount over and above that
sum necessary to pay the claim of the plaintiff for which it was pledged, and by
the reception of his money by the bank, it became indebted to him therefore.

If Hill & Co. were prosecuting this action against the bank, there would be
much more foundation for the claim that the latter could set-off the $1,000 note
against it. But it is to be noted that the partnership of Hill & Co. had been dis-
solved prior to the commencement of this action by the death of Hill. In the
next place a receiver had been appointed for the partnership, and to him, its
assets has been transferred. What was transferred to him was an interest in this
collateral note against the makers, not a claim against the bank—and he was
entitled to recover his interest from the makers of the note. If before the disso-

lution of the partnership, on the transfer to the receiver, the bank had collected all of the collateral note, and thereby was indebted to Hill & Co. for the surplus over the amount necessary to pay its claim for which it had been pledged, and at that time held the note of $1,000 against the partnership, the right of set-off would be complete. But such was not the case—the obligation of the bank to pay, was to the receiver; for the money due to *him* was paid to the bank *after his appointment*.

We incline to the opinion that as to matters of set-off, a receiver stands, substantially, in the position of an assignee for the benefit of creditors, or of an administrator of an estate, though we have not examined this question, and do not say that such is the case. If this be so, it is plain that there could be no set-off in a case like this. It would be a right acquired by the bank after the assignment. But if a receiver *does* stand in a different position from the other trustees named, as to the right of set-off, yet for the reasons already stated, and the additional one, that as we understand it, it is a plain and familiar principal of the law, that after the transfer of a claim by one person to another, and the commencement of an action thereon, the person so sued cannot set-off against it a claim acquired by him after suit brought, or acquire a new right of set-off. The rights of the parties as I have already said, are to be adjudicated as they stood at the commencement of the action, except so far as they may be changed by consent. And as this claim to this note was a claim of the receiver upon the note and against the makers of it, and the bank received it for him, he has a valid claim against it for the amount, not subject to be reduced by setting off a note the bank holds against his assignees.

The judgment of the court of common pleas will therefore be reversed with costs.

Messrs. Black and Rockhold, for plaintiff in error.

Judge M. B. Hagans, for defendant in error.